**LARAMORE & DOUGLASS, Inc.,**
Plaintiff-Appellant,
v.
**CITY OF ANDERSON, IND.,**
Defendant-Appellee.
No. 11352.

United States Court of Appeals
Seventh Circuit.
May 18, 1955.

John H. Bishop, Chicago, Ill., Floyd W. Burns, Indianapolis, Ind., Ray W. Fick, Jr., Bishop, Burdett, Falasz & Doherty, Chicago, Ill., Cadick & Burns, Indianapolis, Ind., for appellant.

Harold J. Anderson, Anderson, Ind., Harry T. Ice, Donald F. Elliott, Jr., Indianapolis, Ind., Ross, McCord, Ice & Miller, Indianapolis, Ind., of counsel, for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff appeals from a summary judgment entered by the district court in favor of defendant. Plaintiff is an Illinois corporation employed in the business of engineering. Defendant is an Indiana municipal corporation. It owns and operates its electric generating and distribution system.

Plaintiff sued to recover damages from defendant for breach of a contract for performance of engineering services by plaintiff for defendant in improving and enlarging its electric system or, in the alternative, to recover the reasonable value of the services rendered.

The motion for summary judgment was based upon plaintiff's complaint,[1] defendant's answer, an affidavit in support of the motion, and an affidavit in opposition thereto. The undisputed facts are now stated.

On May 19, 1948 plaintiff submitted to the board of public works of defendant a proposed contract, under the terms of which plaintiff agreed to make an engineering survey of the defendant's electric generating facilities; to submit a report and recommendations for improvement of the facilities and to design and construct such new facilities as were recommended by plaintiff and approved by defendant. Under the terms of the agreement, plaintiff was to be paid $3,000 for the survey and report and 2½% of the final cost of construction of the additional facilities plus 50% of certain overhead costs of plaintiff.

On May 21, 1948, the contract was accepted and signed by the members of the board of public works and by the mayor of defendant.

Plaintiff forthwith prepared the survey called for by the contract and submitted its recommendations for extension and enlargement of defendant's electric system. The report and recommendations of plaintiff were approved by the common council of defendant. Plaintiff was then paid $3,000.

On April 5, 1949, the common council of defendant enacted ordinance No. 1825 which provided for the issuance of $6,500,000 of revenue bonds for the purpose of constructing extensions to the municipal electric system of said city. Said ordinance provided *inter alia* as follows:

"* * * Whereas, heretofore, pursuant to the recommendation of the Board of Public Works and Safety of said City this Common Council has approved the reports for constructing extensions to said municipal electric system consisting of new and additional generating facilities with appurtenances and new and enlarged buildings housing the generating facilities of the system, and the construction of a high tension transmission loop with step-down substations, all in accordance with and as contemplated by the Report dated September 29, 1948, by Laramore and Douglass, Inc., Engineers, now in file with the City Clerk; and * * *

"Whereas, such extensions are essential and necessary to the continued operation of the municipal electric system and will result in economy and efficiency in the system, and this Council therefore finds it es-

---

1. The first count is for breach of contract, and the second count is for the reasonable value of the services rendered.

sential, necessary, and advisable to construct the same; and * * *

"Now, Therefore, be it Ordained by the Common Council of the City of Anderson, Indiana, as follows: * * *."

On May 6, 1949 a supplemental agreement was signed by plaintiff and ratified by the board of public works on September 19, 1949 by resolution which characterized the supplemental agreement as a clarification of the original contract. By this document the method of paying plaintiff for its services was changed from a percentage of construction costs to a flat fee of $150,000.

After May 21, 1948 plaintiff entered upon the performance of the work agreed to be done by it under the terms of the agreement and continued under the agreement as supplemented by the clarification contract of May 6, 1949. It prepared the plans, drawings, specifications and other engineering data required for the improvements to defendant's electric system as contemplated by its report and recommendation. Plaintiff expended from its own funds in this work $27,-771.45. Performance was continued and services were accepted by defendant until the early part of 1950 when plaintiff suspended work at defendant's request because of a taxpayer's suit that was filed to enjoin the issuance of the bonds called for by ordinance No. 1825.

The litigation involving the ordinance was culminated on June 23, 1952 by a decision of the Supreme Court of Indiana [2] dismissing the suit to enjoin issuance of the bonds. Plaintiff then notified defendant it was ready, able and willing to proceed with the work remaining to be done under the contract. Defendant notified plaintiff it would not proceed with the contract. On July 25, 1952 the common council of defendant enacted ordinance No. 2019 which rescinded the bond ordinance of April 5, 1949.

■ 1. The sole issue on the first count is as to the validity of the contract.

Plaintiff contends that the contract was validly executed initially and was approved and ratified by ordinance No. 1825. Defendant contends that the contract, insofar as it exceeded $2,000, was not approved or ratified by its common council and is therefore void and unenforceable. It further contends that in the absence of knowledge of the alleged contract, there could be no ratification of it by the council, and that in any event the contract, not having been entered into in compliance with the statute, and therefore being void, may not be ratified in any manner. It is agreed that an applicable statute [3] provides:

" * * * the custody, management and control of all * * * electric light works * * * or power plants, owned or operated by any city of the * * * second * * * class, shall, except as otherwise expressly provided in this act, be wholly in the board of public works of such city * * *. That said board of public works in cities of the second class shall have power * * * to contract for any services or work, without any ratification or approval of the common council where the amount to be expended does not exceed the sum of two thousand dollars ($2,000), but where it exceeds said amount said contract must be approved or ratified by ordinance of the common council * * *."

This statute which vests in the defendant's board of public works the custody, management and control of its electric utility, also limits the contractual power of that board. The board of public works alone may enter into contracts on behalf of the defendant for services relative to its electric utility if and only if the amount to be expended under any such contract does not exceed $2,000. When the amount exceeds $2,-000, the contract must be approved or ratified by ordinance of the defendant's common council.

2. Property Owners Inc. v. City of Anderson, 1952, 231 Ind. 78, 107 N.E.2d 3.

3. Burns' Indiana Statutes, § 48–7206.

The alleged contracts of May 21, 1948, and May 6, 1949, were for services relative to the extension and improvement of the defendant's electric utility, and each contract involved more than $2,000.

The rule consistently followed in Indiana is that municipal officers have no power to enter into contracts except where the power is granted by statute, and they must pursue and exercise such power in strict compliance with the mode prescribed by statute. Contracts made by officers without the necessary power or without following the prescribed mode are void and unenforceable. Board of Commissioners of Henry County v. Gillies, 138 Ind. 667, 673, 38 N.E. 40, 42; Platter v. Board of Commissioners of Elkhart County, 103 Ind. 360, 376, 2 N. E. 544, 554.

Under the above-cited cases, any contract which is subject to the provisions of section 48–7206, Burns' Indiana Statutes, but which has been entered into without complying therewith, is void and unenforceable. The statute is couched in terms of *power*.

The plaintiff does not dispute the validity of this rule, but rather alleges that the mandatory procedure prescribed has been complied with in this case.

The defendant's common council did not enact any ordinance for the purpose or with the effect of approving or ratifying either the alleged contract of May 21, 1948, or the alleged contract of May 6, 1949, as required by statute. Nothing in the record indicates that the common council even had knowledge of the existence of the alleged contracts or any agreement for the employment of the plaintiff to design and supervise the alteration, improvement or extension of defendant's electric utility. The affidavit of the defendant's city clerk discloses that the minutes and journal of proceedings of the council, together with its other records, do not show that any such contract of employment was ever considered by the council or that the council had ever had its attention directed to any such agreement. Plaintiff alleges no fact showing such knowledge. In the absence of knowledge of the alleged contracts, the common council, of course, could not approve or ratify them in any manner. Hoskins v. City of Orlando, 5 Cir., 51 F.2d 901, 906; Board of Education of City of Bartlesville v. Montgomery, 177 Okl. 423, 60 P.2d 752, 753.

Although there is no reference to the alleged contracts in any of the records of the defendant's common council, there is one reference to the plaintiff contained in ordinance No. 1825. It is this ordinance which the plaintiff contends approved or ratified the alleged contracts of May 21, 1948, and May 6, 1949.

Ordinance No. 1825 was enacted on April 5, 1949, for the purpose of authorizing the issuance of electric revenue bonds to pay the costs of constructing proposed extensions to the defendant's electric system. There is no mention in the ordinance of these contracts or any agreement for the employment of the plaintiff to design and supervise the construction of the proposed improvements.

The sole reference therein to plaintiff relates to the preliminary engineering survey report, which was prepared by plaintiff and which was fully paid for by defendant. The second preamble clause of the ordinance reads in part as follows:

"Whereas, heretofore, pursuant to the recommendation of the Board of Public Works and Safety of said City this Common Council has approved the reports for constructing extensions to said municipal electric system * * * all in accordance with and as contemplated by the Report dated September 29, 1948, by Laramore and Douglass, Inc., Engineers, now in file with the City Clerk * * *."

The report referred to contained the plaintiff's recommendations for the improvement of the defendant's electric system. It did not contain any provisions relating to the employment of the plaintiff to design and construct such improvements. The plaintiff was fully paid for its services in preparing this report and makes no claim therefor.

The alleged contract of May 6, 1949, was indisputably never approved or ratified by ordinance of the defendant's common council.

We hold that under the first count there cannot be a recovery on the plaintiff's alleged contract, either as originally entered into or as amended.

2. Plaintiff argues that if it cannot recover for breach of the alleged contract, it is entitled to recover on a *quantum meruit* theory for the reasonable value of its services. It says that it "had every reason to believe that its contract with defendant was valid and enforceable." As we have seen, neither the alleged original contract nor the alleged amending contract was approved or ratified by ordinance of the defendant's common council as required by law, and to the extent that they involved an expenditure of more than $2,000, the defendant's board of public works had no power to bind defendant. Lack of knowledge of the invalidity of the contracts, if there was such a lack, does not affect the matter. It is a well known rule of law that anyone dealing with a municipality is charged with notice of its limited powers and must, at his peril, inquire into its powers. Hamer v. City of Huntington, 215 Ind. 594, 603, 21 N.E.2d 407, 411; Moss v. Sugar Ridge Township, Clay County, 161 Ind. 417, 425, 68 N.E. 896, 899.

If recovery is to be allowed on an implied contract against municipalities despite clear statutory restrictions upon the powers of its officers or boards to incur liabilities, then the protection of the statutory restrictions would, in a large measure, be swept away. Under such circumstances there cannot be a quasi-contractual liability enforceable under the law of Indiana. Lee v. York School Township, 163 Ind. 339, 341, 71 N.E. 956; Moss v. Sugar Ridge Township, Clay County, supra, 68 N.E. at page 899; Hamer v. City of Huntington, supra, 21 N.E.2d at page 411.

Accordingly, we hold that plaintiff is not entitled to recover under the second count.

For the reasons hereinbefore set forth, the judgment of the district court is Affirmed.