**The CITY OF GARY and Ambrosio Calo, Appellants–Defendants,**

v.

**Michael O. CONAT, Appellee–Plaintiff.**

No. 45A03–0312–CV–486.

Court of Appeals of Indiana.

June 29, 2004.

---

Michael J. Rappa, Johnson & Rappa, LLC, Merrillville, IN, Attorney for Appellants.

Ryan A. Bratcher, Merrillville, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, the City of Gary (the City) and Ambrosio Calo (Calo) (collectively, Appellants), appeal the trial court's grant of Appellee–Plaintiff's, Michael O. Conat (Conat), Motion to Enforce Settlement and Enter Judgment.

We affirm, in part, and reverse, in part.

### ISSUES

Appellants raise three issues on appeal, which we restate as follows:

1. Whether the trial court erred by granting Conat's Motion, enforcing a Mediated Settlement Agreement against the City, where the City's Attorney had no express authority to enter into the settlement;

2. Whether the trial court erred in enforcing the Mediated Settlement Agreement against the City's employee, Calo; and

3. Whether the trial court erred in its assessment of interest against Appellants.

### FACTS AND PROCEDURAL HISTORY

On February 4, 2000, Calo drove the City's Fire Squad Unit into the rear of Conat's semi-truck. On November 28, 2000, Conat filed a complaint against both the City and its employee, Calo, for personal injuries and other damages he suffered as a result of this collision. Subsequently, on August 21, 2001, all parties attended a court-ordered mediation conference conducted in accordance with the Indiana Rules of Alternative Dispute Resolution. At this mediation conference, a Mediated Settlement Agreement (Mediated Settlement) was executed between Conat, Attorney Luci Horton (Attorney Horton) on behalf of Appellants, and the mediator. Pursuant to the provisions of the Mediated Settlement, Conat accepted a total sum of $220,000 in settlement of all claims, payable no later than six months from the date of execution.

However, Appellants failed to timely pay any portion of the settlement amount. Consequently, on October 25, 2002, Conat filed his Motion to Enforce Settlement and Enter Judgment. On August 18, 2003, in response to Conat's Motion, Appellants filed their Objection and Response. Thereafter, on August 29, 2003, the trial court conducted a hearing on the parties' motions. On October 28, 2003, the trial court issued its Order granting Conat's Motion to Enforce Settlement and Enter Judgment. In its Order, the trial court held, in pertinent part, that:

9. In [Appellants'] Objection and Response to [Conat's] Motion to Enforce Settlement Agreement and Enter Judgment entered on August 8, 2003, there is raised the concept that the Mediated Settlement Agreement is void. The [c]ourt finds that [Attorney Horton], Attorney for [Appellants] during the Mediated Settlement Agreement did have inherent authority in order to settle. The evidence reveals that [Attorney Horton] filed most, if not all, of the pleadings on behalf of [Appellants] prior to the Settlement Conference. As a matter of law, an Attorney has the inherent power to settle a claim when the Attorney attends a settlement procedure, unless there is a communication of lack of authority. *Koval v. Simon Telelect, Inc. et al.,* 693 N.E.2d 1299, 1301 (Ind.1998). [Appellants] presented no evidence of a communication specifically between [Attorney Horton] and themselves, which ex-

pressed a lack of authority in the case at hand.

10. Furthermore, this [c]ourt finds that [Attorney Horton] was not a special agent with limited authority. Instead, [Attorney Horton] was able to fully represent her client, [Appellants], by filing all the necessary pleadings without any complaints as to delving outside of her authority.

11. [Appellants] assert that contracts made by city officers who act without authority or without following requisite procedure are void and unenforceable. *Laramore & Douglass, Inc. v. City of Anderson, Ind.*, 222 F.2d 480, 483 (7th Cir.1955). This [c]ourt finds that because [Attorney Horton] did have inherent authority to settle, the Mediated Settlement Agreement is not void. Consequently, this [c]ourt denies [Appellants] assertions and follows Indiana's strong policy of favoring settlement agreement[s]. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind.2003).

It is THEREFORE ORDERED that [Appellants] pay to [Conat] the amount of $220,000, pursuant to the Mediated Settlement Agreement, plus Attorney fees for the time necessary to enforce the settlement, and interest on said settlement at a rate of ten percent (10%) per year from the date of the settlement. It is further ORDERED that [the City] is compelled to appropriate funds for the payment of the award instanter of the funds are available for that purpose, or levy and collect a tax to pay the award if there are insufficient funds available for that purpose. All monies due to [Conat] shall be paid no later than 45 days from the date of this Order.

(Appellant's App. pp. 9–10).

Appellants now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

■ When, as here, the trial court enters findings of fact and conclusions thereon, we apply the following standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. *Wagner v. Spurlock*, 803 N.E.2d 1174, 1179 (Ind.Ct.App.2004). The court's findings and conclusions will be set aside only if they are clearly erroneous, that is, that the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with the firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* Special findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision. *Id.*

### II. *Authority of the City's Attorney to Execute the Mediated Settlement*

■ Appellants first contend that the trial court erred in finding the Mediated Settlement to be enforceable against the City. Specifically, Appellants assert that Attorney Horton, as a representative of a municipality, lacked the requisite statutory authority to enter into the Mediated Settlement on the City's behalf. Conversely, Conat alleges that by failing to timely assert Attorney Horton's lack of authority, Appellants are now equitably estopped

from challenging the enforceability of the Mediated Settlement.

In *Koval v. Simon Telelect, Inc.,* 693 N.E.2d 1299 (Ind.1998), by way of a certified question from the United States District Court for the Northern District of Indiana, our supreme court decided precisely the issue facing us today: if an Attorney settles a claim as to which the Attorney has been retained but does so without the client's consent, is the settlement binding between third parties and the client? *Id.* at 1301. Analyzing an Attorney's express, implied, and inherent agency power, the supreme court held that:

> for purposes of an Attorney's inherent power, a procedure governed by Indiana's Rules for Alternative Dispute Resolution (ADR rules), is a procedure *'in court'* if the parties are expected to appear by representatives with authority to resolve the matter. Accordingly, in the absence of a communication of lack of authority by the Attorney, as a matter of law, an Attorney has the inherent power to settle a claim when the Attorney attends a settlement procedure governed by the ADR rules.

*Id.* (emphasis added). Our supreme court based its holding on the Attorney's unique position of trust with his client and a long line of Indiana cases that recognize the power of an Attorney to bind the client to the Attorney's actions in court. The supreme court further clarified that its decision is derived from the need for structural integrity of court proceedings and the protection of third parties who rely on the finality of those procedures. *See id.* at 1305. As such, the court reminded us of the well-established general rule that:

> [a]n Attorney may without express authority, bind his client by agreement that judgment may be taken against him, and that, too, though the Attorney knows that his client has a good defense to said action. If [the Attorney] acts contrary to the express directions of his client, or to his injury, the client must look to the Attorney for redress.

*Id.* (quoting *Thompson v. Pershing,* 86 Ind. 303, 310 (1882)).

In the instant case, we find that Attorney Horton, during the court-ordered mediation conference pursuant to ADR rules, had the inherent power to bind Appellants to the Mediated Settlement. Our review of the record reveals that Attorney Horton, at no point before, during, or even after the mediation conference disclaimed her authority to represent Appellants during these proceedings. In fact, she signed the Mediated Settlement in her capacity of "Attorney for [Appellants]." (Appellant's App. p. 37). Only two years later, after Conat filed his Motion to Enforce, did the Appellants for the first time allege Attorney Horton's lack of authority. Moreover, Attorney Horton was officially listed as the City's Attorney on its stationery, and represented herself throughout the legal proceedings with Conat as the representative of the City and Calo. Therefore, absent an express communication to the contrary, Conat could reasonably assume that Attorney Horton possessed the requisite authority to bind her clients during the Mediated Settlement in accordance with ADR Rule 2.7(B)(2).[1]

This result is in line with the recent supreme court decision in *Georgos v. Jackson,* 790 N.E.2d 448 (Ind.2003). Although the issue resolved in *Georgos* is distinct

---

1. ADR Rule 2.7(B)(2) requires that in all mediation conferences, "[a]ll parties, Attorneys with settlement authority, representatives with settlement authority, and other necessary individuals shall be present at each mediation conference to facilitate settlement of a dispute unless excused by the court."

from the question in the present case, our supreme court reaffirmed its adherence to *Koval*. In *Georgos*, our supreme court decided whether, despite the Attorney's authority to settle, the mediated settlement is unenforceable when the Attorney's client is absent during the proceeding. *See id.* at 453. Focusing its analysis initially on *Koval*, our supreme court reiterated that an Attorney, present at a mediation governed by ADR rules, has inherent authority to settle. *See id.* By subsequently applying the basic principles of agency law and Indiana's strong policy in favor of settlements, the court concluded that if an Attorney agrees in writing at a mediation session to settle a claim, neither the presence of the client nor ratification by the client is required to bind the client to the settlement agreement. *Id.* at 454.

■ Nevertheless, the City now contends that Attorney Horton, as an officer of the City, was statutorily limited in her ability to execute the Mediated Settlement. In particular, Appellants rely on Ind.Code § 36-1-4-1, et seq., as authority that only the City's mayor has the ultimate authority to enter into settlement agreements. In support of this contention, Appellants submitted an affidavit by Hamilton Carmouche (Carmouche), the corporation counsel for the City, who asserts that it is part of his duty to recommend to the mayor whether or not a lawsuit should be settled. Counsel Carmouche states that because Attorney Horton failed to notify him of the scheduled mediation conference, she did not receive direction as to whether to settle the case, and thus the resulting settlement should be declared unenforceable. We disagree.

In *Speckman v. City of Indianapolis*, 540 N.E.2d 1189 (Ind.1989), the City of Indianapolis made a similar argument. Our supreme court, declaring the claim to be without merit, concluded that, although the applicable statutes certainly do not preclude the mayor from delegating his duty to sign contracts, it is impractical to require the mayor to sign every single written agreement to which the City is a party. *Id.* at 1191.

Likewise, we find Appellants' contention unpersuasive. Requiring the mayor to attend every mediation conference and to sign the settlement agreement would impede the efficiency and finality of mediation proceedings. Furthermore, this requirement would carve out an exception to our supreme court's holding in *Georgos*, creating a special rule applicable only to municipalities. This exception would not only frustrate the speedy resolution process underlying mediation proceedings, but it would ultimately undermine the integrity of mediation proceedings and effectively insulate a municipality from the enforceability of a settlement proceeding conducted by its Attorney in the absence of the mayor's attendance.

In sum, we hold that Attorney Horton by attending the mediation conference and signing the Mediated Settlement, absent the mayor's presence and the Attorney's express communication to the contrary, had the inherent authority to bind the City to the Mediated Settlement. *See Georgos*, 790 N.E.2d at 454; *Koval*, 693 N.E.2d at 1301. Consequently, we conclude that the evidence supports the trial court's findings, which in turn, support the trial court's judgment. *See Wagner*, 803 N.E.2d at 1179. Therefore, we hold the Mediated Settlement to be enforceable against the City.

### III. *Enforceability of the Mediated Settlement against Calo*

■ Next, Appellants contend that the trial court erred in enforcing the Mediated Settlement against Calo personally. Specifically, they assert that Calo, as an employee of the City, is immune from individual liability under the Indiana Tort Claims

Act. On the other hand, Conat maintains that the defense of immunity is an affirmative defense which was not timely raised and, thus, is now waived.

At the outset, we note that although the issue of Calo's employee immunity was merely included in a footnote in Appellants' response to Conat's Motion to Enforce and Enter Judgment, we nevertheless determine the issue sufficiently raised for our review. *See* Ind. Appellate Rule 46(A)(8).

■ Our review of Appellants' Answer and Affirmative Defenses to Conat's Complaint reveals that the immunity of governmental entity or employee, as included in I.C. § 34–13–3–3, was properly raised as a "first affirmative defense." (Appellee's App. p. 10). Furthermore, our supreme court recently decided that I.C. § 34–13–3–5(b) should be interpreted as standing for the proposition that a plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment. *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind.2003). Our investigation into Conat's Complaint establishes that he conceded that Calo acted within the scope of his employment. In fact, his Complaint expressly stated: "(2) at all relevant times, [Calo] acted within the scope of his employment with [the City]'s Fire Department." (Appellee's App. p. 1). Therefore, based on Calo's immunity as the City's employee, we find that the trial court erred in enforcing the Mediated Settlement against Calo. *See* I.C. § 34–13–3–5(b); *Bushong*, 790 N.E.2d at 471. Accordingly, we reverse the trial court's Order with respect to the enforceability of the Mediated Settlement against Calo personally.

IV. *Assessment of Interest*

■ As a third issue, Appellants argue that the trial court erred in its assessment of interest. Specifically, they assert that the imposed rate of ten percent per year from the date of the Mediated Settlement is contrary to I.C. § 34–13–3–18(b), which only provides for an annual interest rate of six percent. Conat concedes that a governmental entity may only be assessed interest at six percent per year. However, Conat maintains that I.C. § 34–51–4–9 is applicable to Calo, provided that the interest rate, set by the court, may not be less than six percent and not more than 10 percent per year. Thus, Conat contends that the trial court's assessment of an interest rate at ten percent is not error insofar as it applies to Calo.

We agree that under I.C. § 34–13–3–18(b), the City can only be held liable for interest at an annual rate of six percent. Therefore, the trial court's conclusion imposing a ten percent interest rate on the City is clearly erroneous. *See Wagner*, 803 N.E.2d at 1174. Consequently, we reverse the trial court's Order with respect to the City's assessment of interest. Furthermore, as we reversed the trial court's Order with regard to the enforceability of the Mediated Settlement against Calo, we do not need to address the trial court's assessment of interest against him.

*CONCLUSION*

Based on the foregoing, we conclude that the trial court properly granted Conat's Motion to Enforce Settlement and Order Judgment against the City. However, we reverse the trial court's Order: (1) by holding the Mediated Settlement unenforceable against Calo, the City's employee, and (2) by reducing the assessment of interest against the City from ten per-

cent to the statutorily mandated six per-
cent.

Affirmed, in part, and reversed, in part.

KIRSCH, C.J., and NAJAM, J., concur.